# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

MARY S. WEST,

        Plaintiff,

vs.

GREG COX, *et al.*,

        Defendants.

Case No.: 2:15-cv-00665-GMN-VCF

**ORDER**

Pending before the Court is the Motion to Dismiss, (ECF No. 39), filed by Defendants Dr. Romeo Aranas ("Aranas"), Yolanda Campbell ("Campbell"), Beebe Clark ("Clark") (incorrectly named as BB Clark), Bob Faulkner ("Faulkner"), and Jo Gentry ("Gentry") (collectively "Defendants").[1] Plaintiff Mary S. West ("Plaintiff") filed a Response, (ECF No. 42), and Defendants filed a Reply, (ECF No. 44). For the following reasons, the Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

This case arises from alleged constitutional violations that occurred while Plaintiff was incarcerated at Florence McClure Women's Correctional Center ("FMWCC") in Las Vegas, Nevada. (Second Am. Compl. ("SAC") ¶ 8, ECF No. 30). Plaintiff alleges she suffered or continues to suffer from the following medical conditions: (1) injuries to her right shoulder; (2) injuries to her left wrist; and (3) growths on her forehead and hands. (*Id.* ¶¶ 7–57). Plaintiff states six counts of Eighth Amendment violations against Defendants for deliberate indifference to her conditions. (*Id.* ¶¶ 59, 64, 67, 72, 75, 79).

---

[1] Defendants Dr. Francisco Sanchez and Dr. Richard Wulff filed Joinders, (ECF Nos. 41, 49), to the Motion to Dismiss.

### A. Right Shoulder

In her Second Amended Complaint ("SAC"), Plaintiff alleges to have injured her right shoulder while performing her prison job assignment on August 14, 2013. (*Id.* ¶ 17). Dr. James Holmes ("Holmes"), a Nevada Department of Corrections ("NDOC") medical doctor, examined Plaintiff. (*Id.* ¶¶ 10, 18). Holmes prescribed Plaintiff Tylenol and admitted her to an infirmary cell. (*Id.* ¶ 19). Approximately one week later, Holmes x-rayed Plaintiff's shoulder, confirming multiple fractures. (*Id.* ¶ 20). Holmes prescribed more Tylenol, a sling, an ace wrap, and released Plaintiff from the infirmary. (*Id.* ¶ 21).

In September of 2013, Defendant Dr. Richard Wulff ("Wulff") saw Plaintiff for her shoulder and recommended she continue ibuprofen for pain. (*Id.* ¶ 21). In November of 2013, Wulff saw Plaintiff again and allegedly determined that the fractures had healed. (*Id.* ¶ 25). In February of 2014, Wulff saw Plaintiff and allegedly told her he could not treat her without a specific referral from NDOC. (*Id.* ¶ 26).

In August of 2014, Plaintiff alleges that she complained to medical staff of extreme shoulder pain, believing she had reinjured her shoulder. (*Id.* ¶ 27). On August 21, 2014, Defendant Dr. Francisco Sanchez ("Sanchez") ordered an x-ray report of Plaintiff's shoulder, which allegedly revealed a deformity caused by improper healing of the original fracture. (*Id.* ¶ 28). Sanchez treated Plaintiff with an injection, more pain medication, and ordered a follow-up. (*Id.* ¶ 30).

On March 19, 2015, Plaintiff alleges that Wulff examined her and recommended an MRI. (*Id.* ¶ 35). Sanchez requested approval for the MRI on March 24, 2015, which the Utilization Review Panel ("URP") approved on March 31, 2015. (*Id.* ¶ 36). On April 17, 2015, Plaintiff received an MRI that she alleges indicated various tears and injuries in her right shoulder. (*Id.* ¶ 38). Further, Plaintiff alleges that, based on the MRI results, Wulff diagnosed

her with a torn labral and a coracoacromial tear and recommended surgery on May 8, 2015. (*Id.* ¶ 39). On June 15, 2015, Wulff performed surgery on Plaintiff's shoulder. (*Id.* ¶ 40).

Plaintiff alleges that throughout this time, she submitted kites and grievances regarding her treatment and requested that family members phone prison officials with respect to her shoulder and wrist injuries. (*Id.* ¶¶ 23, 32). Plaintiff alleges that Aranas, Gentry, Clark, and Faulkner routinely denied these grievances. (*Id.* ¶¶ 23, 32, 37). On September 2, 2014, Faulkner allegedly warned Plaintiff to stop having people call the office regarding her shoulder and wrist. (*Id.* ¶¶ 33–34).

### B. Left Wrist

Plaintiff alleges she injured her left wrist on June 1, 2014. (*Id.* ¶ 43). A fracture was confirmed and the URP approved surgery on June 3, 2014. (*Id.*). Plaintiff alleges that on June 30, 2014, Faulkner falsely informed her that her case had not been reviewed by the URP, when it had. (*Id.* ¶ 45). On July 14, 2014, Campbell allegedly falsely informed Plaintiff that the surgical approval process had not been completed. (*Id.* ¶ 46). On September 5, 2014, Plaintiff alleges that Gentry falsely notified her that no surgery had been recommended on her wrist. (*Id.* ¶ 47). On October 13, 2014, Clark allegedly informed Plaintiff that her surgery had been rescheduled without explaining why. (*Id.* ¶ 48). On November 16, 2014, Faulkner allegedly informed Plaintiff that her surgery had been rescheduled due to "overly exaggerated" breach of security reasons. (*Id.* ¶¶ 49, 75). During this time, Defendants Aranas, Gentry, Clark, and Faulkner allegedly ignored Plaintiff's kites and grievances inquiring about her pending wrist surgery. (*Id.* ¶ 44). On November 12, 2014, Plaintiff alleges that Holmes performed surgery on her wrist. (*Id.* ¶ 51).

### C. Forehead and Hand Growths

In June of 2014, Plaintiff submitted kites complaining of growths on her forehead and hands. (*Id.* ¶ 53). Sanchez examined the growths and determined that they were not of concern

and did not require treatment. (Motion to Dismiss ("MTD") 13:11–13:13, ECF No. 39). Clark allegedly suggested that Plaintiff cover the growths on her forehead with bangs. (SAC ¶ 54). Plaintiff alleges that her private physician is currently treating the growths with prednisone injections and Plaintiff is awaiting a biopsy. (*Id.* ¶ 56).

## II.  LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. DISCUSSION

In the instant Motion, Plaintiff alleges six counts of Eighth Amendment deliberate indifference violations. (SAC ¶¶ 58–62, 63–65, 66–70, 71–73, 74–77, 78–80). Defendants move to dismiss: (1) Counts II and IV as alleged against Aranas, Campbell, Clark, Gentry, and Faulkner and Count III as alleged against Sanchez and Wulff regarding Plaintiff's shoulder; (2) Count V as alleged against Aranas, Campbell, Clark, Faulkner, Gentry, Sanchez, and Wulff regarding Plaintiff's wrist; and (3) Count VI as alleged against Clark and Sanchez regarding Plaintiff's growths. (MTD 4:6–10:3). Plaintiff asserts that each defendant acted under color of law and is thereby liable under 42 U.S.C. § 1983. (SAC ¶¶ 5, 8–16). Defendants argue that they are entitled to qualified immunity on all claims. (MTD 10:4–11:18). The Court addresses each request in turn.[2]

### A. Shoulder Injury

Count II and IV allege that Aranas, Campbell, Clark, Gentry, and Faulkner failed to investigate the alleged treatment delay, denied Plaintiff's grievances, falsely informed her of the status of her treatment, and that Faulkner requested that calls from family members cease. (SAC ¶¶ 64, 72). Plaintiff alleges that this resulted in delayed diagnosis and surgery, prolonged pain, and deformity. (*Id.* ¶¶ 65, 73). Count III alleges Sanchez and Wulff delayed seeking an MRI after Plaintiff's complaint of further damage to her shoulder, resulting in a ten-month delay of surgery after re-injury. (*Id.* ¶¶ 66–70). The Court begins by addressing Counts II and IV against Aranas, Campbell, Clark, Gentry, and Faulkner, followed by Count III against Sanchez and Wulff.

---

[2] Count I is alleged in its entirety against Holmes, who is not a party to this Motion. Thus, the Court does not address this count.

### i. *Counts II and IV as alleged against Defendants Aranas, Campbell, Clark, Gentry and Faulkner*

Counts II and IV assert that Aranas, Campbell, Clark, Gentry, and Faulkner delayed diagnosis and surgery by denying Plaintiff's grievances, providing her with false information, and requesting that calls from family cease. (SAC ¶¶ 63–65, 71–73). Each of these allegations fails to establish liability because "[l]iability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

First, the SAC fails to show how, simply by denying Plaintiff's grievances, Aranas, Campbell, Clark, Gentry, or Faulkner personally participated in preventing, delaying, or in any way affecting Plaintiff's treatment. To the contrary, the SAC indicates that Plaintiff received regular examinations and that once Wulff recommended surgery, he performed it promptly. (*Id.* ¶¶ 24–26, 28, 30, 35–36, 39–40). Moreover, this Court has held that the denial of grievances alone is insufficient to establish personal participation for a § 1983 claim. *See May v. Williams*, No. 2:10-cv-00576-GMN-LRL, 2012 WL 1155390, at *3 (D. Nev. Apr. 4, 2012). Therefore, the denial of grievances fails to establish these Defendants' personal participation in the alleged violation. *See Stewart v. Warner*, No. C15-5243 RBL-KLS, 2016 WL 1104893, at *5 (W.D. Wash. Feb. 29, 2016), *report and recommendation adopted*, No. C15-5243 RBL-KLS, 2016 WL 1089974 (W.D. Wash. Mar. 21, 2016) (holding that nurses who had reviewed and denied Plaintiff's grievances did not personally participate in alleged Eighth Amendment violations because they did not have decision-making authority over Plaintiff's care).

Second, Plaintiff's claim that Aranas, Campbell, Clark, Gentry, and Faulkner "fed her false information" fails to allege a nexus between the false statements and the delay in diagnosis or surgery. (SAC ¶ 72). This claim therefore fails to establish these Defendants' personal participation in the alleged violation. *See Taylor*, 880 F.2d at 1045. Finally, Plaintiff's

allegation that Faulkner warned her to stop having family members call on her behalf is not actionable because even had the SAC alleged that Faulkner succeeded in stopping these calls, it would not show how this would have delayed her diagnosis or surgery. Thus, the claim fails to establish Faulkner's personal participation in the delay. *See id.* Because Counts II and IV fail to allege the personal participation necessary for a colorable Eighth Amendment cruel and unusual punishment claim, they are dismissed without prejudice.

### ii. *Count III as alleged against Defendants Sanchez and Wulff*

Count III seeks to hold Defendants Sanchez and Wulff liable for their delay in seeking an MRI and diagnosing Plaintiff's fractures, resulting in a ten-month delay in surgery. (SAC ¶ 70). The Eighth Amendment's prohibition against cruel and unusual punishment requires states to provide medical care to prisoners because they cannot secure medical care for themselves. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A prisoner asserting an Eighth Amendment claim for denial of medical care must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. There is both an objective and a subjective component to an Eighth Amendment violation. *LeMaire v. Maass*, 12 F.3d 1444, 1451 (9th Cir. 1993).

The first, objective, prong of the deliberate indifference standard requires that an alleged deprivation be sufficiently serious. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9. "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that prison has a 'serious' need for medical treatment."

*McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by*, *WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

The second, subjective, prong of the test requires a plaintiff to show that the defendant's response to the need was deliberately indifferent. *See id.* at 1060. A plaintiff may satisfy the second prong by demonstrating that (1) the prison official engaged in a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (2) harm caused by the indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "A prisoner need not show harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Id.* However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. It does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. To state a claim for deliberate indifference arising from a delay in treatment, a prisoner must allege that the delay was harmful, although an allegation of substantial harm is not required. *McGuckin*, 974 F.2d at 1060.

Here, Count III satisfies the first prong of the test by alleging the existence of chronic and substantial pain, (SAC ¶ 68), yet fails the second prong of the test, because Plaintiff does not allege a purposeful act or failure to respond to her pain. To the contrary, the SAC alleges that Defendants Sanchez and Wulff monitored and cared for her shoulder injury, following a conservative course of treatment. (*Id.* ¶¶ 24–26, 28, 30, 35–36, 39–40). Moreover, once recommended, Defendants performed the MRI and surgery promptly. (*Id.* ¶¶ 39–40). In short, the SAC alleges a disagreement over treatment between a prisoner and the prison medical staff that does not rise to the level of deliberate indifference. *Cf. Ortiz v. City of Imperial*, 884 F.2d 1312 (9th Cir. 1989) (finding deliberate indifference where police knew of prisoner's condition and totally failed to treat it competently). At most, Plaintiff alleges malpractice. *See Wood v.*

*Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) ("While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice."). Thus, Count III as alleged against Defendants Sanchez and Wulff is dismissed without prejudice.

### B. Wrist Injury

Defendants move to dismiss Count V as alleged against Defendants Aranas, Campbell, Clark, Faulkner, Gentry, Sanchez, and Wulff for intentionally delaying surgery on Plaintiff's wrist. (MTD 9:5–9:15). The Court begins by addressing the allegations against Aranas, Sanchez, and Wulff, followed by the allegations against Campbell, Clark, Faulkner, and Gentry.

#### i. *Count V as alleged against Defendants Aranas, Sanchez, and Wulff*

Plaintiff alleges that Defendants Aranas, Sanchez, and Wulff were responsible for the delay in her wrist surgery. (SAC ¶¶ 50, 52, 75). However, she fails to point to any specific action or inaction which would demonstrate that Aranas, Sanchez, and Wulff personally participated in the alleged denial of rights. Unlike the allegations against Campbell, Clark, Faulkner, and Gentry (*Id.* ¶¶ 45–49), Plaintiff does not allege that Aranas, Sanchez, or Wulff personally participated in the delay of surgery. Plaintiff merely alleges that she submitted kites and grievances to Aranas and that Sanchez and Wulff were aware of her fractures. (*Id.* ¶¶ 44, 50, 75).

As discussed *supra*, Aranas' denial of grievances, without more, is not enough to establish an Eighth Amendment violation. *See May*, 2012 WL 1155390, at *3. Additionally, although Sanchez and Wulff may have been aware of Plaintiff's need for surgery, Plaintiff does not allege they were involved in scheduling her surgery, and therefore fails to allege their personal participation in its delay. Because liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation, Count V as alleged against

Defendants Aranas, Sanchez, and Wulff is dismissed without prejudice. *See Taylor*, 880 F.2d at 1045.

### ii. *Count V as alleged against Defendants Campbell, Clark, Faulkner, and Gentry*

Defendants move to dismiss Count V as alleged against Defendants Campbell, Clark, Faulkner, and Gentry. (MTD 9:5–9:15). With regard to these Defendants, however, Plaintiff's allegations fulfill both the objective and the subjective prong of the deliberate indifference test discussed *supra*. *See Jett*, 493 F.3d at 1096. Plaintiff does not allege that these Defendants simply denied her grievances, but that they deliberately delayed surgery the URP had approved, causing her to linger in pain. (SAC ¶¶ 43–52, 74–77). This allegation fulfills the objective prong requirement of a serious medical need because it asserts chronic, substantial pain and a reasonable doctor's determination of the injury as worthy of comment and treatment. *See Egberto v. Nev. Dep't of Corr.*, 678 F. App'x 500, 502–03 (9th Cir. 2017) (holding an inmate's chronic back pain to be a serious medical need because doctors found it worthy of comment and treatment).

Plaintiff establishes the subjective prong because she alleges that Campbell, Clark, Faulkner, and Gentry acted purposefully in delaying her surgery. (SAC ¶¶ 45–50). Plaintiff alleges that Faulkner, Campbell, and Gentry falsely informed her that her case had not been reviewed, approved, or even recommended, when it had. (*Id.* ¶¶ 45–75). Plaintiff also alleges that Faulkner and Clark notified her that surgery had been rescheduled without explanation and for "overly exaggerated breach of security reasons." (*Id.* ¶¶ 48–49, 75). Accepting these allegations as true, Plaintiff sufficiently alleges purposeful acts on the part of Campbell, Clark, Faulkner, and Gentry, causing harm in the form of approximately five months of prolonged pain. (*Id.* ¶¶ 43–52, 74–77). Accordingly, Defendants' Motion to Dismiss Count V as alleged against Campbell, Clark, Faulkner, and Gentry is denied.

### C. Growths

Count VI seeks to hold Defendants Sanchez and Clark liable for deliberate indifference with regard to their alleged failure to treat Plaintiff's growths on her hands and forehead. (SAC ¶¶ 78–80). This claim fails on the first, objective prong of the deliberate indifference test, discussed *supra*. *See Jett*, 493 F.3d at 1096. Count VI does not allege a sufficiently serious injury, or any injury at all. Plaintiff simply states that she noticed growths on her forehead and hands, but fails to allege that they caused her pain or affected her daily activities. Although she contends that her private physician found the growths to be worthy of investigation, (SAC ¶ 56), at most this establishes a difference of medical opinion, which is not cognizable as an Eighth Amendment violation. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

As for Plaintiff's allegations against Clark, the SAC merely alleges that Clark suggested Plaintiff cover the growths with bangs. (SAC ¶ 54). Once again, "[p]risoners can establish an eighth amendment violation with respect to *medical care* if they can prove there has been deliberate indifference to their serious medical needs." *Hunt v. Dental Dept.*, 865 F.2d 198, 200 (9th Cir. 1989) (emphasis added). This is an example of a cosmetic suggestion, not medical care, and is insufficient to establish liability under the Eighth Amendment. Therefore, Count VI as alleged against Defendants Sanchez and Clark is dismissed without prejudice.

### D. Qualified Immunity

Defendants contend that they are entitled to qualified immunity on all claims. (MTD 10:4–11:18). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity doctrine protects defendants not just from ultimate liability, but from having to litigate at all. *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

In analyzing a claim of qualified immunity, a court must examine: (1) whether the facts as alleged, taken in the light most favorable to plaintiff, show that the defendant's conduct violated a constitutional right; and (2) if a constitutional right was violated, whether, "in light of the specific context of the case," the constitutional right was so clearly established that a reasonable official would understand that what he or she was doing violated that right. *Saucier*, 533 U.S. at 201–02; *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (holding that the contours of the constitutional right violated must be sufficiently clear). If no constitutional right was violated, the inquiry ends and the defendant prevails. *Saucier*, 533 U.S. at 201.

Defendants Campbell, Clark, Faulkner, and Gentry are not entitled to qualified immunity for Plaintiff's Eighth Amendment deliberate indifference claims. First, as set forth more fully above, the facts alleged in Count V of the SAC are sufficient to establish that Defendants violated a constitutional right when they denied, delayed, or intentionally interfered with Plaintiff's medical treatment. *See Hunt*, 865 F.2d at 201. Second, the constitutional right was clearly established such that a reasonable prison official would have known that continued delay of surgery constituted unlawful deliberate indifference. "It is settled law that deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment." *Jackson v. McIntosh*, F.3d 330, 332 (9th Cir. 1996) (holding prison officials' delay of an inmate's kidney transplant to be a clearly established constitutional violation).

Defendant's argument that Plaintiff failed to identify which clearly established law each Defendant had violated is unconvincing. (MTD 10:5–11:18). "For a right to be clearly established it is not necessary that the very action in question have previously been held unlawful . . . To define the law in question too narrowly would be to allow defendants to define away all potential claims." *Jackson*, 90 F.3d at 332. Thus, Defendants Campbell, Clark, Faulkner, and Gentry are not entitled to qualified immunity on Count V.

Because the Court has dismissed Counts II, III, IV, and VI, a qualified immunity analysis is unnecessary regarding these claims. However, because the Court has dismissed each claim without prejudice, the analysis may become necessary should Plaintiff amend the SAC to state cognizable Eighth Amendment claims.

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Dismiss, (ECF No. 39), is **GRANTED in part** and **DENIED in part**.  The following causes of action are **DISMISSED without prejudice**: Count II; Count III; Count VI; Count V as alleged against Aranas, Sanchez, and Wulff; and Count IV.  The Motion to Dismiss the following cause of action is **DENIED**: Count V as alleged against Campbell, Clark, Faulkner, and Gentry.

**IT IS FURTHER ORDERED** that Plaintiff shall have twenty-one (21) days from the filing date of this Order to file a third amended complaint.  Failure to file a third amended complaint by this date shall result in the dismissal of Plaintiff's claims with prejudice.

**DATED** this \_\_\_8\_\_ day of August, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court