**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARY S. WEST, | ) |
| | ) |
|         Plaintiff, | )   Case No.: 2:15-cv-00665-GMN-VCF |
| vs. | ) |
| | )   **ORDER** |
| GREG COX, *et al.*, | ) |
| | ) |
|         Defendants. | ) |
| | ) |

Pending before the Court is the Motion to Reconsider, (ECF No. 51), filed by Plaintiff Mary S. West ("Plaintiff"). Defendants Dr. Romeo Aranas ("Aranas"), Yolanda Campbell ("Campbell"), Beebe Clark ("Clark"), Bob Faulkner ("Faulkner"), Dr. Francisco Sanchez ("Sanchez"), Dr. Richard Wulff ("Wulff"), and Jo Gentry ("Gentry") (collectively "Defendants") filed a Response, (ECF No. 53), and Plaintiff filed a Reply, (ECF No. 54). For the reasons discussed herein, Plaintiff's Motion to Reconsider is **DENIED**.

## I.   BACKGROUND

This case arises from alleged constitutional violations that occurred while Plaintiff was incarcerated at Florence McClure Women's Correctional Center ("FMWCC") in Las Vegas, Nevada. (Second Am. Compl. ("SAC") ¶ 8, ECF No. 30). Plaintiff states six counts of Eighth Amendment violations against Defendants for deliberate indifference to her conditions. (*Id.* ¶¶ 59, 64, 67, 72, 75, 79).[1] Specifically, Plaintiff alleges she suffered or continues to suffer from the following medical conditions: (1) injuries to her right shoulder; (2) injuries to her left wrist; and (3) growths on her forehead and hands. (*Id.* ¶¶ 7–57).

---

[1] A more complete description of the events can be found in this Court's Prior Order and will not be fully repeated here. (*See* Order 1:16–4:4, ECF No. 50). However, a summary of the key facts necessary to decide the instant Motion will follow.

### A. Right Shoulder

Plaintiff alleges that her right shoulder was injured on August 14, 2013. (*Id.* ¶ 17). After her injury, Nevada Department of Corrections ("NDOC") medical doctor James Holmes ("Holmes") saw her twice a week and provided her a sling, provided her an ace wrap, prescribed her Tylenol, and performed an x-ray. (*Id.* ¶ 20–21). Plaintiff alleges numerous, additional visits to Wulff and Sanchez where they examined her, x-rayed her shoulder, and treated her with an injection. (*Id.* ¶ 21–30). On March 19, 2015, Wulff ordered an MRI of Plaintiff's shoulder, which she received on April 17, 2015. (*Id.* ¶ 35). Based on the MRI, Wulff recommended surgery, which he performed on June 15, 2015. (*Id.* ¶ 39–40).

Throughout this time, Plaintiff submitted kites and grievances to FMWCC regarding her treatment. (*Id.* ¶¶ 23, 22). Moreover, Plaintiff requested that family members phone prison officials with respect to her shoulder and wrist injuries. (*Id.*) Plaintiff alleges that Aranas, Gentry, Clark, and Faulkner routinely denied these grievances and that Faulkner asked Plaintiff to stop having family members call the office. (*Id.* ¶¶ 23, 32–34, 37).

### B. Left Wrist

Plaintiff alleges she injured her left wrist on June 1, 2014. (*Id.* ¶ 43). The fracture was confirmed, and Plaintiff was approved for surgery on June 3, 2014. (*Id.*). Between June 30 and November 16, Plaintiff alleges various specific instances in which Campbell, Gentry, Clark, and Faulkner falsely informed her about the status and scheduling of her surgery. (*Id.* ¶¶ 46–49, 75). During this time, Defendants Aranas, Gentry, Clark, and Faulkner allegedly ignored Plaintiff's kites and grievances concerning her pending wrist surgery. (*Id.* ¶ 44). Ultimately, on November 12, 2014, Holmes performed surgery on Plaintiff's wrist. (*Id.* ¶ 51).

### C. Forehead and Hand Growths

In June of 2014, Plaintiff submitted kites complaining of growths on her forehead and hands. (*Id.* ¶ 53). Sanchez examined the growths and determined that they were not of concern

and did not require treatment. (Mot. to Dismiss ("MTD") 13:11–13, ECF No. 39). Additionally, Clark allegedly suggested that Plaintiff cover the growths on her forehead with her bangs. (SAC ¶ 54). Plaintiff alleges that her private physician is currently treating the growths with Prednisone injections and Plaintiff is awaiting a biopsy. (*Id.* ¶ 56).

On August 8, 2017, the Court granted in part and denied in part Defendants' motion to dismiss. (*See* Prior Order, ECF No. 50) (hereinafter "Prior Order"). Specifically, the Court found that Plaintiff failed to state cognizable Eighth Amendment claims with respect to Counts II, III, IV, and VI, and Count V in regard to Aranas, Sanchez, and Wulff. (*See id.* 13:1–10). Plaintiff filed the instant Motion to Reconsider on August 23, 2017, in which Plaintiff requests that the Court reverse its dismissal of the aforementioned claims or, in the alternative, permit Plaintiff to file an amended complaint. (Mot. to Recons. 9:10–19).

## II. <u>LEGAL STANDARD</u>

"[A] motion for reconsideration should not be granted, absent highly unusual circumstances." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted). Reconsideration is appropriate where: (1) the court is presented with newly discovered evidence, (2) the court committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). However, a motion for reconsideration is not a mechanism for rearguing issues presented in the original filings. *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985). Furthermore, although the court enjoys discretion in granting or denying a motion under this rule, "amending a judgment after its entry remains an extraordinary remedy which should be used sparingly." *Allstate Ins. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (internal quotation marks and citation omitted).

## III. DISCUSSION

In the instant Motion, Plaintiff requests that the Court reconsider its dismissal of Counts II and IV as alleged against Defendants Aranas, Campbell, Clark, Gentry, and Faulkner; Count III as alleged against Defendants Sanchez and Wulff; Count V as alleged against Defendants Aranas, Sanchez, and Wulff; and Count VI as alleged against Defendants Clark and Sanchez. The Court will address each claim in turn.

### A. Counts II and IV as alleged against Defendants Aranas, Campbell, Clark, Gentry, and Faulkner.

In her Motion, Plaintiff reiterates that Aranas, Campbell, Clark, Gentry, and Faulkner personally delayed her diagnosis and surgery by denying her grievances, feeding her false information, and telling her to cease having family members call the prison on her behalf. (Mot. to Recons. 4:11–24). However, as stated in the Court's Prior Order, Plaintiff fails to allege how Defendants, by these actions, participated in delaying her diagnosis or surgery. (Prior Order 6:9–7:6, ECF No. 50).

Plaintiff cites *Michaud v. Bannister* to assert that a prison official can be held liable for personal participation in a constitutional violation by denying grievances. *See Michaud*, No. 2:08-cv-01371-MMD-PAL, 2012 WL 6720602, at *1 (D. Nev. Dec. 26, 2012). However, *Michaud* is factually distinguishable from the case at hand. *Michaud* involved an inmate for whom multiple doctors recommended cataract surgery. *Id.* at *1. The URP repeatedly denied surgery for four years. *Id.* The inmate sued the warden, alleging that the warden had responded negatively to the inmate's internal grievances regarding his medical care claims. *Id.* at *10. Although the warden did not participate in the prisoner's medical care, the Court found personal participation because he was responsible for "rectifying violative medical conditions in the prison." *Id.*

Here, in contrast, Plaintiff's treating physicians did not recommend an MRI or surgery, and although Defendants may have denied her grievances, the SAC does not allege that they denied her care. (SAC ¶¶ 24–26, 28, 30, 35–36, 39–40). Conversely, the SAC alleges that Plaintiff was examined on multiple occasions and treated with pain medications, injections, x-rays, and a sling. (*Id.*). Because Plaintiff does not allege that Defendants influenced the physicians' decisions regarding an MRI or surgery, Counts II and IV failed to establish the personal participation necessary for an Eighth Amendment violation. *See Taylor v. List*, 880 F.3d 1040, 1045 (9th Cir. 1989) (stating that "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant"). Accordingly, Plaintiff's Motion to Reconsider Counts II and IV is denied.

**B.     Count III as alleged against Defendants Sanchez and Wulff.**

In regards to Count III, Plaintiff argues that her claim amounts to more than a difference of opinion over treatment between a prisoner and the prison medical staff. (*Id.* 6:1–3). Additionally, Plaintiff highlights the Court's decision not to consider the report of Dr. Marshall Anthony, which was attached as an exhibit to Plaintiff's response to Defendants' motion to dismiss. (*Id.* 6:10–16).

With respect to Sanchez and Wulff, as stated in the Court's Prior Order, Plaintiff's allegations that Sanchez and Wulff did not seek an MRI or surgery sooner do not rise to the level of deliberate indifference. (Prior Order 8:16–9:4). In this regard, Plaintiff's reliance on *Hutchinson* and *Jackson* is misplaced. In *Hutchinson*, the Court declined to find an Eighth Amendment violation when a prison doctor misdiagnosed an inmate's kidney stone as a urinary tract infection. *Hutchinson v. U.S.*, 838 F.2d 390, 392–394 (9th Cir. 1988). In *Jackson*, the Court did find a colorable Eighth Amendment claim because an inmate alleged prison doctors denied him a kidney transplant because of personal animosity, rather than honest medical judgment. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Here, Plaintiff's SAC neither alleges that Sanchez or Wulff denied her an MRI, nor that they did so out of animosity. Although the MRI and subsequent surgery were not as prompt or efficient as Plaintiff may have hoped, Plaintiff was provided multiple examinations, pain medication, an injection, and a sling. (SAC ¶ 24–26, 28, 30, 35–36, 39–40). Plaintiff's allegations that Sanchez and Wulff delayed seeking an MRI and surgery do not rise to the level of a constitutional violation. Indeed, "[a] doctor's decision not to order a particular test or procedure is a matter of medical judgment, and a denial of that test does not constitute cruel and unusual punishment." *Manley v. Nevada Dep't of Corrections*, No. 3:07-cv-00374-LRH-VPC, 2009 WL 2949502, at *6 (D. Nev. Sept. 11, 2009); *see also Harris v. City of Vista*, 402 F. App'x 267, 268 (9th Cir. 2010).

With regard to Plaintiff's contention that the Court overlooked Dr. Anthony's report, the Court declined to consider the report in light of the general rule that "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quotation and citation omitted); *see also Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996) (stating that a Rule 12(b)(6) motion to dismiss must be treated as a Rule 56 motion for summary judgment if the Court relies on materials outside the pleading submitted by either party to the motion to dismiss). In deciding the Court's Prior Order, the Court declined to treat Defendants' motion to dismiss as a motion for summary judgment. *See Anderson*, 86 F.3d at 934; *see* FED. R. CIV. P. 7. The Court therefore finds there was no error in its decision. Accordingly, Plaintiff's Motion to Reconsider Count III is denied.

**C.     Count V as alleged against Defendants Aranas, Sanchez, and Wulff.**

As to Count V, Plaintiff seeks reconsideration of dismissal of the claim against Defendants Aranas, Sanchez, and Wulff. (Mot. to Recons. 7:19–20). Specifically, Plaintiff asserts that it is "unreasonable to think that [Plaintiff's] wrist surgery could have been

continually delayed without the participation of Defendants Wulff, Sanchez, and Aranas, since [Plaintiff's] surgeon (Wulff), treating physician (Sanchez), and the NDOC Medical Director (Aranas) were all responsible for approving the surgery." (*Id*. 8:4–8).

However, Plaintiff's SAC fails to allege the personal involvement of either Aranas, Sanchez, or Wulff in the scheduling or rescheduling of her surgery. In her SAC, Plaintiff only alleges: (1) Aranas knew of Plaintiff's wrist injury; and (2) Plaintiff submitted kites and grievances to Aranas. (SAC ¶¶ 43–52, 74–77). The Court cannot conclude, in the absence of specific allegations, that Aranas, Sanchez, and Wulff were personally responsible for *scheduling* Plaintiff's surgery. Thus, Plaintiff's Motion to Reconsider Count V is denied.

### D. Count VI as alleged against Defendants Clark and Sanchez.

With regard to Count VI, Plaintiff reasserts that because her private physician treated her growths with a Prednisone injection and performed a biopsy, she has established that Clark and Sanchez were deliberately indifferent to her serious medical needs. (*Id.* 8:13–9:8). Plaintiff relies on *McGuckin v. Smith* to argue that an injury need not be painful in order to be "serious." *See* 974 F.2d 1050, 1059–60 (9th Cir. 1992). However, Plaintiff's reliance on *McGuckin* is misplaced. In *McGuckin*, the Court noted:

> The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are *examples* of *indications* that a prisoner has a "serious" need for medical treatment.

*McGuckin*, 974 F.2d at 1059 (emphasis added). Although Plaintiff does allege that her private physician treated her growths with Prednisone and sought a biopsy, she did not allege that the growths significantly affected her daily activities or caused her substantial and chronic pain. (SAC ¶¶ 78–80).

Moreover, even had Plaintiff alleged the existence of a serious injury, her allegations would still be insufficient to establish that Sanchez and Clark were deliberately indifferent to

her needs. To the contrary, the SAC indicates that Sanchez examined Plaintiff promptly for her growths and determined that treatment was unnecessary. (SAC ¶ 79). This decision does not constitute an "unnecessary and wanton infliction of pain," but at most "negligence in diagnosing or treating a medical condition," which "without more, does not violate a prisoner's Eighth Amendment rights." *McGuckin*, 974 F.2d at 1059.

In regards to Clark, the Court reiterates that Clark's suggestion to Plaintiff to cover her growths with bangs does not amount to cruel and unusual punishment. (*See* Prior Order 11:11–17). Although Plaintiff may have taken offense to the suggestion, it does not rise of the level of deliberate indifference. Thus, Count VI failed to establish a colorable Eighth Amendment claim. Accordingly, Plaintiff's Motion to Reconsider Count VI is denied.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reconsider, (ECF No. 51), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff shall have twenty-one (21) days from the filing date of this Order to file a third amended complaint. Failure to file a third amended complaint by this date shall result in the dismissal of Plaintiff's claims dismissed in the Court's Prior Order with prejudice.

**DATED** this __28__ day of March, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Court