UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MARY S. WEST,

           Plaintiff,

vs.

GREG COX, *et al.*,

           Defendants.

Case No.: 2:15-cv-00665-GMN-VCF

**ORDER**

Pending before the Court is the Motion to Dismiss, (ECF No. 61), filed by Defendants Dr. Romeo Aranas ("Aranas"), Yolanda Campbell ("Campbell"), Beebe Clark ("Clark"), Bob Faulkner ("Faulkner"), Jo Gentry ("Gentry"), Dr. Francisco Sanchez ("Sanchez"), and Dr. Richard Wulff ("Wulff") (collectively "Defendants"). Plaintiff Mary S. West ("Plaintiff") filed a Response, (ECF No. 62), and Defendants filed a Reply, (ECF No. 63). For the following reasons, the Motion to Dismiss is **GRANTED**.

**I.**     <u>**BACKGROUND**</u>

This case arises from alleged constitutional violations that occurred while Plaintiff was incarcerated at Florence McClure Women's Correctional Center ("FMWCC") in Las Vegas, Nevada. (Third Am. Compl. ("TAC") ¶ 8, ECF No. 56). Plaintiff alleges she suffered or continues to suffer from the following medical conditions: (1) injuries to her right shoulder; (2) injuries to her left wrist; and (3) growths on her forehead and hands. (*Id.* ¶¶ 18–82).

    **A.**     **Right Shoulder**

Plaintiff injured her right shoulder while performing her prison job assignment on August 1, 2013. (*Id.* ¶ 18). Dr. James Holmes ("Holmes"), a Nevada Department of Corrections ("NDOC") medical doctor, examined Plaintiff, prescribed her Tylenol, and

admitted her to an infirmary cell. (*Id.* ¶¶ 10, 19–20). Approximately one week later, Holmes x-rayed Plaintiff's shoulder confirming multiple fractures and subsequently prescribed more Tylenol, provided Plaintiff a sling and an ace wrap, and released Plaintiff from the infirmary. (*Id.* ¶¶ 21–22).

In September 2013, Defendant Dr. Richard Wulff ("Wulff"), a medical doctor under contract with NDOC, saw Plaintiff for her shoulder injury and recommended she continue Ibuprofen for her pain. (*Id.* ¶¶ 12, 28–29). In November 2013, Wulff saw Plaintiff again and determined that the fractures had healed. (*Id.* ¶ 31). In February 2014, Wulff reexamined Plaintiff and told her he could not treat her without a specific referral from NDOC. (*Id.* ¶¶ 34–35).

In August 2014, Plaintiff alleges that she complained to medical staff of extreme shoulder pain, believing she had suffered further damage to her shoulder. (*Id.* ¶ 36). On August 21, 2014, Defendant Dr. Francisco Sanchez ("Sanchez"), an NDOC medical doctor, ordered an x-ray report of Plaintiff's shoulder, which revealed a deformity caused by improper healing of the original fracture. (*Id.* ¶¶ 11, 37). Sanchez treated Plaintiff with an injection, more pain medication, and ordered a follow-up appointment. (*Id.* ¶ 40).

On March 19, 2015, Plaintiff alleges that Wulff examined her and recommended an MRI. (*Id.* ¶ 48). Sanchez requested approval for the MRI which the Utilization Review Panel ("URP") approved on March 31, 2015. (*Id.* ¶¶ 49, 51). On April 17, 2015, Plaintiff received an MRI that indicated various tears and injuries in her right shoulder. (*Id.* ¶¶ 53–54). Wulff diagnosed Plaintiff with a labral tear and a coracoacromial tear and recommended surgery. (*Id.* ¶¶ 55–56). On June 15, 2015, Wulff performed surgery on Plaintiff's shoulder. (*Id.* ¶ 57).

Throughout this time, Plaintiff submitted kites and grievances regarding her shoulder pain and treatment to Aranas, the NDOC medical doctor; Gentry, the warden of FMWCC; and FMWCC nurses Clark and Faulkner. (*Id.* ¶¶ 9, 13–15, 24). Plaintiff alleges that these

Defendants routinely denied her kites and grievances and did nothing to remedy the delay in treatment. (*Id.* ¶¶ 24–27). Plaintiff also asserts her family members phoned prison officials to inquire about her shoulder and wrist injuries. (*Id.* ¶ 44). On September 2, 2014, Faulkner allegedly warned Plaintiff to stop having people call the prison regarding her shoulder and wrist. (*Id.* ¶¶ 45–46).

### B. Left Wrist

Plaintiff alleges she injured her left wrist as a result having to disproportionately rely on her left arm while she awaited treatment for her right shoulder. (*Id.* ¶¶ 60–61). A fracture was confirmed and the URP approved surgery on June 3, 2014. (*Id.* ¶ 62). Plaintiff alleges that Aranas, Sanchez, and Wulff were collectively responsible "through their respective subordinate staff and/or personal selves" for scheduling and approving her medical treatment. (*Id.* ¶ 63). On June 30, 2014, Faulkner allegedly falsely informed Plaintiff that her case had not been reviewed by the URP. (*Id.* ¶ 65). Plaintiff alleges that on July 14, 2014, Campbell falsely informed Plaintiff that the surgical approval process had not been completed. (*Id.* ¶ 66). On September 5, 2014, Plaintiff alleges that Gentry falsely notified her that no surgery had been recommended on her wrist. (*Id.* ¶ 67). On October 13, 2014, Clark allegedly informed Plaintiff that her surgery had been rescheduled due to an unspecified breach of security. (*Id.* ¶¶ 68–69, 109). During this time, Defendants Aranas, Clark, Faulkner, and Gentry allegedly ignored Plaintiff's kites and grievances concerning her pending wrist surgery. (*Id.* ¶ 64). On November 12, 2014, Wulff performed surgery on Plaintiff's wrist. (*Id.* ¶ 72). Plaintiff states the delay in surgery caused her to needlessly and unreasonably endure several months of extreme pain. (*Id.* ¶ 73).

Relevant to the instant Motion, Plaintiff filed a second amended complaint on November 11, 2016, (ECF No. 30), asserting six causes of action for Eighth Amendment violations. Defendants subsequently filed a motion to dismiss, (ECF No. 39), which the Court granted in

part and denied in part. (*See* Order, ECF No. 50). The Court found that Plaintiff failed to state cognizable Eighth Amendment claims with respect to Counts II, III, IV, VI, and Count V as alleged against Aranas, Sanchez, and Wulff. (*See id.* 13:1–10). The Court denied Defendants' motion with respect to Count V against Campbell, Clark, Faulkner, and Gentry because Plaintiff sufficiently alleged these Defendants "deliberately delayed surgery the URP had approved, causing her to linger in pain." (*Id.* 10:6–10).

On April 17, 2018, Plaintiff filed her Third Amended Complaint, (ECF No. 56), bringing six causes of action for Eighth Amendment violations.[1] On May 11, 2018, Defendants filed the instant Motion to Dismiss, (ECF No. 61).

## II.  LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by

---

[1] Count I is alleged solely against Holmes, (*see* TAC ¶¶ 83–87), who is not a party to this Motion. Accordingly, the Court does not address this claim.

amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III.     DISCUSSION

Plaintiff asserts six causes of action for deliberate indifference to her medical conditions in violation of the Eighth Amendment. In the instant Motion, Defendants seek to dismiss: (a) Counts II and IV against Aranas, Campbell, Clark, Faulkner, and Gentry for their alleged delays in getting Plaintiff treatment for her shoulder injury; (b) Count III as alleged against Sanchez and Wulff for their delay in recommending and performing an MRI; (c) Count V asserted against Aranas, Sanchez, and Wulff with respect to their treatment of Plaintiff's wrist; and (d) Count VI against Clark and Sanchez concerning Plaintiff's growths on her forehead and hands.[2] (Mot. to Dismiss ("MTD") 4:25–14:23, ECF No. 61). The Court addresses each claim in turn.

To maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Prison officials are deliberately indifferent to a prisoner's serious medical needs when they "deny, delay or intentionally interfere with medical treatment." *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (citing *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir.1988)).

---

[2] In her Response to Defendants' Motion to Dismiss, Plaintiff states that she does not contest dismissal of her sixth cause of action. (Resp. 8:24–28, ECF No. 62). The Court therefore grants Defendants' Motion to Dismiss with respect to Count VI.

Deliberate indifference has a two-part test. *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir.1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc). First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett*, 439 F.3d at 1096 (quoting *Estelle*, 429 U.S. at 104). Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. *Id.*

### A. Counts II & IV as alleged against Aranas, Campbell, Clark, Faulkner, and Gentry

In Count II, Plaintiff alleges that Aranas, Campbell, Clark, Faulkner, and Gentry by "knowingly refusing and failing to investigate the lack of treatment provided to [Plaintiff]," caused "prolonged pain to [Plaintiff], deformity, further damage to [Plaintiff's] shoulder, and undue delay in diagnosis and surgical treatment." (Third Am. Compl. ("TAC") ¶ 90, ECF No. 56). Count IV states that Defendants delayed diagnosis and surgery by refusing and failing to investigate delayed treatment, ignoring or denying Plaintiff's grievances, providing Plaintiff with false information, and requesting that calls from her family cease. (*Id.* ¶¶ 89, 102).

Defendants move to dismiss Counts II and IV on the grounds that Plaintiff fails to allege personal participation by Defendants and that denials of grievances and the alleged failure to investigate do not rise to the level of deliberate indifference. (MTD 9:8–13). Defendants continue that Plaintiff's assertions of deliberate indifference are belied by her allegations that "every time she complained of pain, she was seen by the institutional physician, and was then scheduled and seen by an outside orthopedist." (*Id.* 9:13–21). Plaintiff argues, in turn, that Defendants were on notice of her medical needs and by repeatedly denying her grievances, Defendants stunted the process by which Plaintiff sought to have her serious medical needs addressed. (Resp. to MTD 3:7–24).

The Court finds that Plaintiff's allegations fail to establish the requisite personal participation and causation elements of a deliberate indifference claim. "A person deprives another of a constitutional right, within the meaning of Section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citation omitted). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Id.* Liability under § 1983 only attaches upon personal participation by a defendant in the constitutional violation. *Taylor v. List*, 880 F.3d 1040, 1050 (9th Cir. 1989). "The denial of prisoner grievances alone is insufficient to establish personal participation under 42 U.S.C. § 1983." *May v. Williams*, No. 2:10-cv-576-GMN-LRL, 2012 WL 1155390, at *4 (D. Nev. Apr. 4, 2012) (citing *Rider v. Werholtz*, 548 F. Supp. 2d 1188, 1201 (D. Kan. 2008)).

Counts II and IV fail to state claims for deliberate indifference because they center upon Defendants' denial of grievances which, standing alone, does not establish personal participation. While Plaintiff does allege Aranas, Campbell, Clark, Faulkner, and Gentry ignored her medical condition, Plaintiff correspondingly states that she received treatment by Doctors Holmes, Wulff, and Sanchez following her complaints. (TAC ¶¶ 25–28, 36–40, 50–52). Because Plaintiff was treated following her grievances, the Court cannot plausibly infer the delays in treatment or diagnosis were attributable to Defendants' handling of Plaintiff's grievances and kites. For the same reason, the Court cannot discern a causal link between Faulkner's admonishment of Plaintiff for her family members' calls and the delays in treatment.

In short, Plaintiff fails to allege facts to show that Defendants, by denying her grievances and kites, personally participated in, and caused, Plaintiff's alleged constitutional deprivation.

Moreover, because Plaintiff alleges a course of treatment concurrent with her complaints, the Court finds that Defendants' actions or omissions do not amount to a "conscious disregard of an excessive risk to [Plaintiff's] health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Therefore, Defendants' Motion to Dismiss with respect Counts II and IV is granted.

### B.  Count III as alleged against Sanchez and Wulff

In Count III, Plaintiff seeks to hold Defendants Sanchez and Wulff liable for their delay in seeking an MRI and diagnosing Plaintiff's fractures, resulting in a ten-month delay in surgery. (TAC ¶ 99). Defendant argues that Plaintiff fails to state a claim because the determination of whether and when to order an MRI constitutes an exercise of medical judgment that cannot give rise to an Eighth Amendment violation. (MTD 10:7–13).

A prisoner asserting an Eighth Amendment claim for denial of medical care must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There is both an objective and a subjective component to an Eighth Amendment violation. *LeMaire v. Maass*, 12 F.3d 1444, 1451 (9th Cir. 1993). The objective prong of the deliberate indifference standard requires the plaintiff to demonstrate a "serious medical need" by showing that failing to treat the prisoner's condition could result in further significant injury or "the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

The second, subjective, prong of the analysis requires a plaintiff to show that the defendant's response to the need was deliberately indifferent. *Id*. A plaintiff may satisfy the second prong by demonstrating that (1) the prison official engaged in a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (2) harm caused by the indifference. *Id.* "A prisoner need not show harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Id.* However, "a complaint that a physician has been negligent in diagnosing or

treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *See Estelle*, 429 U.S. at 106 ("It does not become a constitutional violation merely because the victim is [an inmate].").

Here, Count III satisfies the objective prong of the test by alleging the existence of extreme pain as well as deformities to her right shoulder, (TAC ¶¶ 23, 37, 39, 42, 94–95), and Defendants do not dispute these assertions. (*See* MTD 10:7–26). With respect to the subjective component, Plaintiff alleges that Defendants' actions, or inactions, resulted in Plaintiff "not receiving an MRI and detection of the labral and various other tears in her shoulder until around 8 months after she complained," of her injury and "until nearly 2 years after she initially complained." (TAC ¶¶ 98–99). Plaintiff continues that such neglect "resulted in prolonged pain, improper healing, deformities, and additional damages to [Plaintiff's] right shoulder." (*Id.* ¶ 100).

While these allegations may be sufficient to establish gross negligence or medical malpractice, they fall short of meeting the "high legal standard" of deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) ("A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment."). It is well established that differences of opinion between inmates and medical personnel, or between medical professionals, do not amount to deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). "To prevail under these principles, [a plaintiff] must show that the course of treatment the doctors chose was medically unacceptable under the circumstances," and that defendants "chose this course in conscious disregard of an excessive risk to plaintiff's health." *Id.* (citations omitted).

Here, Plaintiff does not allege facts to suggest that Wulff and Sanchez's failure to order an earlier MRI arose from conscious disregard. Rather, Plaintiff's allegations indicate the delays were due to differences of medical opinion, even if mistaken or negligent. For example,

Plaintiff alleges that Wulff, upon seeing Plaintiff for her second appointment, made a medical judgment "that the fractures in [Plaintiff's] shoulder had healed." (*See* TAC ¶ 31). Even if erroneous, this would not amount to deliberate indifference. Plaintiff also alleges that Wulff and Sanchez did, in fact, subsequently treat her with Ibuprofen, an x-ray scan, an injection, and pain medication during the time between Plaintiff's injury and ultimate MRI scan. That Plaintiff received treatment—even if substandard and ineffective—shows that Wulff and Sanchez did not overlook or ignore Plaintiff's condition. Furthermore, once Wulff ultimately recommended the MRI, Sanchez requested formal approval within the week, and the URP authorized the MRI a week after that.

These facts contrast with those of *Jackson v. McIntosh*, relied upon by Plaintiff, where the Ninth Circuit found a triable question of deliberate indifference in light of the plaintiff's allegations that the defendant doctors were motivated by personal animus. 90 F.3d 330, 332 (9th Cir. 1996). In *Jett v. Penner*, deliberate indifference was established where the defendant doctor falsely informed the plaintiff a follow-up appointment was scheduled and the doctor retroactively edited his medical notes to make it appear as if the plaintiff's needs were less dire. 439 F.3d 1091, 1097–98 (9th Cir. 2006). In *Egberto v. Nevada Dep't of Corr.*, the Ninth Circuit held that a five-month delay in performing an MRI could constitute deliberate indifference because of evidence that the defendants purposefully prevented the plaintiff's MRI by pretextually transferring him to another facility on the day of his appointment. 678 F. App'x 500, 503–04 (9th Cir. Feb. 6, 2017).

Unlike those cases, Plaintiff has not shown that Sanchez and Wulff were improperly motivated in their treatment. Even if the treatment was substandard or negligent, the facts do not give rise to an inference of deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (noting the distinction between "deliberate indifference to serious medical needs,"

and "negligen[ce] in diagnosing or treating a medical condition."). Accordingly, the Court grants Defendant's Motion as to Count III.

### C. Count V as alleged against Aranas, Sanchez, and Wulff

In Count V, Plaintiff alleges that Defendants Aranas, Sanchez, and Wulff were responsible for the delay in her wrist surgery. (TAC ¶¶ 71, 73, 109, 111–12). Specifically, Plaintiff alleges that Aranas, Sanchez, and Wulff, together with Faulkner, Clark, and Gentry, "intentionally and repeatedly delayed surgery . . . for overly-exaggerated reasons such as 'breach of security.'" (TAC ¶ 109).

While Plaintiff alleges that Aranas, Sanchez, and Wulff "either ignored, denied, or knowingly responded to [Plaintiff's grievances] with false and inaccurate information," Plaintiff's examples of these alleged falsehoods are limited to those communicated by Campbell, Clark, Faulkner, and Gentry.[3] As to Campbell, Clark, Faulkner, and Gentry, Plaintiff identifies the alleged false statements and how they impacted Plaintiff's surgery timeline. (*See* TAC ¶¶ 65–68). With respect to Aranas, Sanchez, and Wulff, however, the TAC is silent as to what false information they relayed to Plaintiff and the way in which such information contributed to a delay in surgery.

The Court recognizes that Plaintiff incorporates a new allegation that Aranas, Sanchez, and Wulff were collectively responsibility for scheduling Plaintiff's surgery and approving scheduling changes. (*Id.* ¶¶ 109–10). Without specific facts evidencing conscious disregard, however, the Court cannot plausibly infer that Defendants' failure to expedite her wrist surgery extends beyond negligence or medical malpractice. Accordingly, the Court dismisses Count V as alleged against Aranas, Sanchez, and Wulff.

---

[3] Count V as asserted against Campbell, Clark, Faulkner, and Gentry survived Defendants' prior motion to dismiss and therefore is not addressed in this Order. (*See* Order 10:5–25, 12:9–24, 13:9–10, ECF No. 50).

In summary, the Court finds that Plaintiff's Third Amended Complaint fails to state plausible claims for deliberate indifference with respect to Counts II, III, IV, V as alleged against Aranas, Sanchez, and Wulff, and VI.  Because Plaintiff has not cured the deficiencies with these claims after three amendments, the Court finds that another amendment would be futile.  Accordingly, the Court dismisses these causes of action with prejudice.

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 61), is **GRANTED.**  The following causes of action are **DISMISSED with prejudice**: (1) Count II; (2) Count III; (3) Count IV; (4) Count V against Aranas, Sanchez, and Wulff; and (5) Count VI.

**IT IS FURTHER ORDERED** that the Parties shall submit a proposed discovery plan/scheduling order within fourteen (14) days of this Order.

**DATED** this __18__ day of October, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Court